UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MILWAUKEE COUNTY, EMPLOYEE'S
RETIREMENT SYSTEM OF THE COUNTY
OF MILWAUKEE, and PENSION BOARD,
EMPLOYEE'S RETIREMENT SYSTEM OF
THE COUNTY OF MILWAUKEE,

        Plaintiffs,

v.                             Case No. 06-C-0372

MERCER HUMAN RESOURCE
CONSULTING, INC. f/k/a WILLIAM M.
MERCER, INCORPORATED,

        Defendant.

## MERCER'S MOTION IN LIMINE AND SUPPORTING MEMORANDUM

Mercer hereby moves the Court for an Order precluding Plaintiffs from making inflammatory comments at trial, either in argument or questioning of witnesses, that would tend to appeal to jurors' status as Milwaukee County citizens and taxpayers.

### Introduction

As the Court is aware, the jury trial in this case currently scheduled for January 2009 will involve claims by Milwaukee County against Mercer, a private corporate citizen, related to the costs of the County's Employees' Retirement System, for which Mercer was the actuary. Based on the argumentative questioning of Mercer's fact and expert witnesses during depositions taken

during discovery, Mercer believes that the Plaintiffs' counsel will likely seek to inflame the jury's prejudices as taxpayers against Mercer in a variety of ways, including but not limited to:

- Characterizing the County as "cash-starved," or suffering from a "huge financial crisis" or "terrible disaster" because of Mercer.

- Assuming without evidence that the County is unable to provide necessary government services or "cut programs" because of Mercer.[1]

- Assuming without evidence that the "quality of life" in the County has been affected by Mercer's alleged conduct, including "kids' programs and parks."

- Assuming without evidence that spending on "mental health care" in the County has been affected by Mercer's alleged conduct.

- Characterizing County citizens as "uptight" and "very conservative" about taxes and government spending.

- Engaging in scare rhetoric about the County "going bankrupt" or being unable to "survive financially" because of Mercer's alleged conduct.

- Referring to the County Executive's political decision to accept a lower salary.

This list is by no means exhaustive of the kinds of inflammatory comments that have been interjected into discovery in this matter by Plaintiffs' counsel, and Mercer of course cannot anticipate every potential variation on these themes that Plaintiffs might offer at trial. This motion seeks guidance from the Court prior to trial limiting this type of rhetoric, which could otherwise unfairly prejudice the jury against Mercer, and taint the trial.

## **Argument**

Motions *in limine* may be used to preclude anticipated inflammatory comments from

---

[1] To the contrary, County Executive Scott Walker has repeatedly stated publicly that the County continues to provide all necessary services to its residents, and does so more efficiently today than it had previously. *See, e.g.,* 2009 Budget Address, September 25, 2008 ("This is a budget that does more with less and presents a way to sustain vital services for years to come"), attached to the Declaration of Paul D. Bauer ("Bauer Decl.") as Exhibit 1, p. 5; Milwaukee County 2005 Budget Highlights, attached hereto as Bauer Decl., Exhibit 2 ("A countywide effort to focus on fiscal responsibility and meeting essential County services results in the abolishment of more than 150 positions. . . . The result is streamlined County Government that continues to address critical County functions.").

opposing counsel. *Alexander v. Mount Sinai Hosp.*, 484 F.3d 889, 906 (7th Cir. 2007) (noting that parties may avoid entirely the problem of anticipated improper comments through the use of a motion *in limine*). Specifically, it is improper for parties to make comments or arguments that appeal to jurors' pecuniary interests as taxpayers. *United States v. Schimmel*, 943 F.2d 802, 806 (7th Cir. 2001); *United States v. Scott*, 660 F.2d 1145, 1170 (7th Cir. 1981). The Seventh Circuit has repeatedly held that such appeals to financial interests of the jury are improper and impermissible in litigation. *See, e.g., Moore ex rel. Estate of Grady v. Tuleja*, --- F.3d ---, 2008 WL 4459180 at *17 (7th Cir. 2008) (comment that "the city is not a random amorphous entity. It's you. We're talking about tax dollars here" was improper); *United States v. Martel*, 792 F.2d 630, 637 (7th Cir. 1986) (comment that "I will guarantee you one thing, you will never sit on a case that is more important to the taxpayers of this nation" was improper); *United States v. Reicin*, 497 F.2d 563, 574 (7th Cir. 1974) (comment that "I assure you, whatever the insurance companies pay out, they get right back again through premiums from you, from me and from anybody else who has to pay for automobile insurance . . ." was improper); *United States v. Trutenko*, 490 F.2d 678, 679 (7th Cir. 1973) (comment that ". . . they probably had been paying plenty in premiums just as you people have, and the reason you are paying plenty is because the insurance companies are forced to pay out on phony claims" was improper).

Unfortunately, such improper appeals promise to be a key part of the County's case. Plaintiffs have put forth a constant stream of inflammatory "financial crisis" rhetoric, making direct connections between this alleged financial status and its impact on County taxpayers. Worse, the County has repeatedly and explicitly shown its intent to make a direct connection to taxpayers sitting on the jury:

- "As a result, [the County is] **cash starved to handle the services that they're really trying to provide the members of the County that are sitting here today in this room**."[2]

- "Well, let me tell you something. **Depending on whether Milwaukee County or Mercer prevails in this lawsuit, it's going to make an enormous difference to this County**. You know that, don't you, sir?"[3]

- "An actuary comes in here, gives them totally wrong advice, and suddenly **all the money they were planning to spend for more jobs, more services, more quality of life in this town, including everything from kids programs to the parks, to the County courthouse, suddenly they can't do anymore because they don't have that money because an actuary made a mistake. Now, that's an actuary making a political choice for the County, isn't it? They're becoming the decision maker, correct?**"[4]

- "And as we're sitting here today . . . thousands of those workers are keeping the streets going, police activities, park activities, zoo activities, right now as we speak, right? . . . We got to work here this morning because of the efforts of those thousands of employees, right? . . . And you understand if an actuary makes a serious error, it can dramatically affect a pension fund, correct? . . . **So you're almost like a heart surgeon in that you have a specialized knowledge here, and if you make a mistake, someone could get hurt, right, a lot of people? . . . But actuaries that handle a billion and a half dollar pension fund that involves 10s – 10,000 or more workers can hurt a lot of people at one time by one error, correct?**"[5]

- "Yeah, you know, Milwaukee is a kind of place that's uptight and not all right when budgets jump, right? **They're very — they're very conservative as taxpayer people, you know that, don't you, or do you know anything about this culture up here?**"[6]

- "Do you know that people in Milwaukee and Wisconsin a**re not happy about excessive sudden jumps in government spending?**"[7]

- "And you don't know that there was **kind of a fiscal conservatism that pervades this state?**"[8]

- "Well, first of all, you said you couldn't see how they would be responsible. And then I turned the question around and said is it your testimony to the jury

---

[2] *See* Bauer Decl., Exhibit 3, p. 240 (all emphasis in this brief is added).
[3] *Id.*, p. 242.
[4] *Id.*, pp. 139-140.
[5] Bauer Decl., Exhibit 4, p. 72-74.
[6] Bauer Decl., Exhibit 3, pp. 251-252.
[7] *Id.*, p. 252.
[8] *Id.*, p. 256.

in that hypothetical that even if the actuaries did it all wrong, gave them horrible numbers, **the County could no longer pay for services it wanted to pay for**, that that was okay because they were offsetting benefits because they're saving money because they didn't have it spent? Is that what you're telling me?"[9]

- "And you were there to answer questions to — to let these members of the Pension Study Commission know that this county was not going to **bankrupt itself** by passing some — some new pension benefit, right?"[10]

- "Do you know enough about Milwaukee County to know whether it has been in a **financial crisis since a year or two after this benefit package was passed**? Do you know enough about it to even know the answer to that question?"[11]

- "So this is not an academic issue. This is a real issue for this County and to whether — **how well they can survive financially for the next 20 years**, correct? I mean, that's what this lawsuit is about, a real-world issue, correct, of a **big financial crisis?**"[12]

- "If—if I'm right that this county is in a **deep financial crisis** as a result of this passage of this pension benefit package in 2000 and early 2001 . . ."[13]

- "Have you looked at the budgets and found out **how many programs have been cut in this town**? Have you, sir?"[14]

- "Did you know that the County executive who is supposed to get $160,000 salary is only taking $60,000 because things are so bad? Did you know that?"[15]

- "Suddenly we're told the County has to take its limited resources and pay $50 million into the pension fund **and we have to cut back on mental health care**."[16]

- "Yeah, that they are having to pay 40-, 50-, 60- and projected 70-, 80-, 90 million dollars in contributions according to data you've seen; **they have to pull that money away, and they have had to strip services, they've had to strip employees. That's what I'm talking about as a financial crisis.**"[17]

---

[9] *Id.*, p. 141.
[10] Bauer Decl., Exhibit 4, p. 23.
[11] Bauer Decl., Exhibit 3, p. 29.
[12] *Id.*
[13] *Id.*, p. 30.
[14] *Id.*
[15] *Id.*
[16] *Id.*, p. 142.
[17] *Id.*, p. 145.

- "Likewise, when Milwaukee County suddenly gives to its retirees a huge amount of additional money they did not mean to give them, they wouldn't have given them if they had made an informed choice causing Milwaukee County **not to be able to fund other salaries, to cut back salaries**, isn't that the same problem; it's not a benefit?"[18]

- "And you're assuming that if a County is **forced to cut back on employees because of a huge pension fund financial crisis**, that that's a benefit to the County to have to be forced to do that, cut back employees, correct?"[19]

- "Is it better to disrupt the meeting for a few minutes or to let a county pass an employee benefits ordinance which has proven to be a **terrible disaster for them**?"[20]

These are only a few of the repeated statements made by the County during the course of this litigation, all of which are clearly improper and designed to bias the jury. The County's expert witnesses have continued this trend, arguing that the County "can't afford to put lightbulbs in their building and the parks are falling apart,"[21] that the BackDROP "almost bankrupted this County and they cannot afford to replace the people that retired or quit,"[22] that there has been "a cash crunch on the County," and that "as a result, the County's been put into a financial strait, and services have been diminished dramatically for the population."[23]

These inflammatory comments promise to be a theme at trial. Direct appeals to the pecuniary interests of County taxpayers—the "members of the County that are sitting here today in this room" that Plaintiffs' Counsel continually references—are clearly improper.[24] The Court should exclude any such statements from the County.

---

[18] *Id.*, p. 239.
[19] *Id.*, p. 286.
[20] Bauer Decl., Exhibit 5, p. 18.
[21] Bauer Decl., Exhibit 6, p. 127.
[22] *Id.*, p. 149.
[23] Bauer Decl., Exhibit 7, pp. 173-175 (also testifying that "the County is already at bare bones. It can't cut any further . . . You've basically put the County into deep financial strait and now want to be rewarded for that or have it as a — as an offset? That's disgraceful").
[24] Bauer Decl., Exhibit 3, p. 240.

## Conclusion

For the reasons set forth above, the Court should exclude any inflammatory comments at trial, either in argument or questioning of witnesses, that would tend to appeal to jurors' status as Milwaukee County citizens and taxpayers. A proposed Order is attached for the Court's convenience.

Dated this 5th day of November, 2008.

**s/ Paul D. Bauer**
QUARLES & BRADY LLP
411 East Wisconsin Avenue, Suite 2040
Milwaukee, WI 53202-4497
(414) 277-5625

*Attorneys for Mercer Human Resource Consulting, Inc.*